IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MOULDTEC, INC., | ) |
|               Plaintiff, | ) |
|     v. | )    12 C 4249 |
| PAGTER & PARTNERS INTERNATIONAL B.V., and PAGTER INNOVATIONS, INC., | )    Judge Virginia M. Kendall |
|               Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Mouldtec, Inc. filed this four-count complaint against Pagter & Partners International B.V. and Pagter Innovations, Inc. for declaratory judgment of patent non-infringement, patent invalidity, tortious interference with a business relationship, and attorney fees. Defendant Pagter International, which owns the subject patent, filed a counterclaim against Mouldtec alleging direct and indirect patent infringement. Mouldtec now moves for summary judgment that claim 2 of U.S. Patent No. 6,581,330 ("the '330 patent") is invalid under 35 U.S.C. §103 because differences between the prior art and the subject matter claimed would have been obvious to one of ordinary skill in the art. It also moves for summary judgment of non-infringement with respect to claims 2 and 4 of the '330 patent. For the following reasons, Mouldtec's motion for summary judgment of non-infringement is granted. Its motion for summary judgment of invalidity is dismissed as moot.[1]

---

[1] The parties have agreed that Pagter concedes summary judgment as to claim 4 and that Mouldtec "drops" its declaratory judgment claims for invalidity under 35 U.S.C. § 112 and tortious interference. (Dkt. No. 133, Non-Infringement Resp. at 1). The Court therefore enters judgment in favor of Mouldtec that claim 4 is non-infringing and grants what appears to be Mouldtec's motion pursuant to Fed. R. Civ. P. 41 to voluntarily dismiss its tortious interference claim and claim for invalidity under 35 U.S.C. § 112. *See Tolls v. Carroll Touch, Inc.*, 23 F.3d 174, 177 (7th Cir. 1994) (district court has discretion to grant or deny motion to dismiss pursuant to Rule 41). The only issues now before the Court on summary judgment are the infringement and validity of claim 2 of the '330 patent.

**I. BACKGROUND**

The following facts are undisputed unless otherwise noted. This dispute arises over a patent for packaging cut flowers owned by Pagter, the '330 Patent. (Dkt. No. 134, Def. 56.1 Non-Infringement Resp., ¶ 2). The complete packaging structure can be seen in Figures 1 and 2 below. The two basic parts of the complete packaging structure are what the '330 Patent refers to as the "rectangular crate" and the "protective tube." The protective tube can be placed on top of the rectangular crate to protect the flowers during transport or around the rectangular crate to reveal the flowers during their display.




**Figure 1**. "[P]erspective view of a complete flower packaging according to the invention in the transport position." (Dkt. No. 46-1, Patent '330 at 3).

**Figure 2**. "[P]erspective view of a complete flower packaging according to the invention in the presentation position for long cut flowers." (Dkt. No. 46-1, Patent '330 at 3).

The specific dispute before this Court concerns only claim 2 of the '330 Patent. (*See* Dkt. No. 133, 2). Mouldtec seeks a declaration that claim 2 of the '330 Patent is invalid and that its

2

accused product does not infringe claim 2. (*See id.*; *see also* Dkt. No. 132, Def. 56.1 Invalidity Resp., ¶¶ 1, 3). Claim 2 states:

> 2. Packaging for cut flowers comprising:
>
> (a) a rectangular crate defining an interior volume, the rectangular crate having sloping side walls;
>
> (b) an upwardly facing channel having a base portion disposed close to the top portion of the sloping walls, the base portion being defined by an inner flange and an outer flange and projecting outwardly of the interior volume, wherein the base of the channel is capable of supporting a foldable rectangular protective tube, the base of the channel having an upper surface and a lower surface, the lower surface of the base forms a top portion of a downward facing channel defined by an outer surface of the crate and a projection of the outer flange below the base, the downward facing channel being capable of accommodating a top edge of the protective tube and ribs of relatively low height are disposed on the top portion of the downward-facing channel; and
>
> (c) a shoulder projecting into the interior volume and extending between the top of the sloping walls of the crate and the channel base or the bottom of the inner flange of the channel. (Dkt. No. 132, Def. 56.1 Invalidity Resp., ¶ 5).

Claim 2 describes a rectangular crate with an upward facing channel and downward facing channel; both of which may accommodate a protective tube. (*Id.* at ¶ 6). Figure 1 above illustrates a protective tube **2** in an upward facing channel of the crate **1** and a cover **3** placed on the tube for transporting flowers. (*Id.* at ¶ 7). Figure 2 illustrates a protective tube **2** placed in a downward facing channel for displaying flowers. (*Id.* at ¶ 8).

Mouldtec's accused products, the "Tazza" and "Secchio" flower containers, have the same relevant structures and function in the same way as the protected packaging; the primary difference between the Tazza and the Secchio is their size. (Dkt. No. 134, Def. 56.1 Non-Infringement Resp., ¶ 4). The parties' infringement dispute, however, focuses primarily on whether a reasonable jury could find that the accused products have the following highlighted limitations included in claim 2:

3

\* \* \* \* \*

(b) **an upwardly facing channel having a base portion** disposed close to the top portion of the sloping walls, the base portion being **defined by an inner flange and an outer flange** […]

(c) **a shoulder** projecting into the interior volume and **extending between the top of the sloping walls of the crate and the channel base or the bottom of the inner flange of the channel**. (Dkt. No. 132, Def. 56.1 Invalidity Resp., ¶ 5) (emphasis added).

The Figure 5 below shows a cross-section of two patented crates nesting in one another. Figure 6 shows a cross-section of the accused product.



**Figure 5**. "[C]ross-section through a side wall section of two crates nested in one another." (Dkt. No. 46-1, Patent '330 at 3).



**Figure 6**. Accused Mouldtec crate. (Dkt. No. 138, Pl. 56.1 Infringement Resp., ¶ 2).

On June 4, 2014, this Court entered an order construing certain disputed claim terms. Mouldtec now moves for summary judgment on its patent invalidity and non-infringement claims.

4

**II. STANDARD OF REVIEW**

"Summary judgment is proper when, viewing all facts and inferences in favor of the nonmoving party, no genuine dispute as to material fact exists, and the moving party is entitled to judgment as a matter of law." *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012). Whether a fact is material depends on the underlying substantive law that governs the dispute. *Id.* A genuine dispute is one where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* (citation omitted). Where a proposed statement of fact is supported by the record and not adequately rebutted, the court will accept that statement as true for purposes of summary judgment. An adequate rebuttal requires a citation to specific support in the record; an unsubstantiated denial is not adequate. *See Albiero v. City of Kankakee*, 246 F.3d 927, 933 (7th Cir. 2001); *Drake v. Minnesota Mining & Mfg. Co.*, 134 F.3d 878, 887 (7th Cir. 1998) ("Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter; rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted.") (internal quotation marks omitted).

**III. DISCUSSION**

    **A. Infringement[2]**

"[W]hoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States ... infringes the patent." 35 U.S.C. § 271(a) (2006). Finding patent infringement requires a two-step process. First, the court must construe the claims alleged to be infringed. *See Dynacore Holdings Corp. v. U.S. Philips Corp.*,

---

[2] The Court declines to strike "at least page 16" of Mouldtec's Motion for Summary Judgment of Non-Infringement for failing to comply with the page limitation under the Local Rules. Although this Court has substantial discretion to require strict compliance with the Local Rules, including page limitations, such a severe sanction is not warranted in this case. *See Ammons v. Aramark Uniform Servs., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004) (citing *Bordelon v. Chicago School Reform Bd. of Trustees*, 233 F.3d 524, 527 (7th Cir. 2000)) ("Given their importance, we have consistently and repeatedly upheld a district court's discretion to require strict compliance with its local rules governing summary judgment.").

363 F.3d 1263, 1273 (Fed. Cir. 2004). Second, the court must compare the construed claims to the allegedly infringing product. *Id*. Having already construed the disputed terms in its June 4, 2014 order, the Court now considers whether each limitation in claim 2 of the '330 patent is found in the accused products, either literally or under the doctrine of equivalents. *See Freedman Seating Co. v. Am. Seating Co.*, 420 F.3d 1350, 1356–57 (Fed. Cir. 2005).

Mouldtec does not have the burden of proof on the issue of infringement, but Mouldtec "nonetheless bears the initial burden of coming forward with sufficient evidence to demonstrate that there is no material issue of fact that would preclude summary judgment, and that it is entitled to judgment as a matter of law." *Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 806 (Fed. Cir. 1999). In response, Pagter does not "have the burden of establishing that it is entitled to judgment in its favor; it need only show either that the movant did not establish that it is entitled to judgment on undisputed facts or on the opposer's version of the facts, or that there are material issues of fact which require resolution at trial." *Id*. at 806-07.

In this case, Mouldtec argues that no reasonable jury could find that the accused products have the limitations highlighted below in claim 2 of the '330 patent:

> (b) **an upwardly facing channel having a base portion** disposed close to the top portion of the sloping walls, the base portion being **defined by an inner flange and an outer flange** and projecting outwardly of the interior volume, wherein the base of the channel is capable of supporting a foldable rectangular protective tube, the base of the channel having an upper surface and a lower surface, the lower surface of the base forms a top portion of a downward facing channel defined by an outer surface of the crate and a projection of the outer flange below the base, the downward facing channel being capable of accommodating a top edge of the protective tube and ribs of relatively low height are disposed on the top portion of the downward-facing channel; and
>
> (c) **a shoulder** projecting into the interior volume and **extending between the top of the sloping walls of the crate and the channel base or the bottom of the inner flange of the channel**. (Dkt. No. 132, Def. 56.1 Invalidity Resp., ¶ 5) (emphasis added).

In determining whether there is infringement, this Court will compare the claims, as construed, with the accused products.

### 1. Inner Flange

"Literal infringement of a claim occurs when every limitation recited in the claim appears in the accused device, i.e., when 'the properly construed claim reads on the accused device exactly.' " *KCJ Corp. v. Kinetic Concepts, Inc.*, 223 F.3d 1351, 1358 (Fed. Cir. 2000) (quoting *Amhil Enters. Ltd. v. Wawa, Inc.*, 81 F.3d 1554, 1562 (Fed. Cir. 1996)). Here, a genuine issue of material fact exists as to whether the "upwardly facing channel having a base portion […] defined by an inner flange and an outer flange" limitation ("inner flange limitation") literally reads on the accused products.



**Figure 6**. Cross-section of upward-facing channel in accused Mouldtec crate. (Dkt. No. 138, Pl. 56.1 Infringement Resp., ¶ 2).

The parties' primary dispute over this limitation is whether the inner wall of the upward-facing channel in the accused product is defined by an "inner flange." In its claim construction order, this Court refused to construe "flange," instead relying on the dictionary definition of flange as a "rim" or "lip" in considering the limitation. *See Mouldtec*, 2014 WL 4262633, at *3. The inner wall of the accused product's upward-facing, as seen in Figure 6, certainly appears to satisfy this limitation. Mouldtec insists, however, that the '330 patent "describes and depicts the inner flange as a separate and distinct structure from the sloping side wall of the crate." (Dkt. No. 128, at 8). The use of two terms in a patent only means that they connote different meanings; "not that they necessarily refer to two different structures." *Applied Med. Res. Corp. v. U.S. Surgical Corp.*, 448 F.3d 1324, 1333 n. 3 (Fed. Cir. 2006) (internal quotation marks and

citation omitted). To demonstrate that the terms refer to different structures, the moving party must present evidence dictating the same—such as "prosecution history, specifications, comparison with other claims in the patent, and other evidence." *Id.* (internal quotation marks and citation omitted). In this case, there is insufficient evidence to allow the Court to determine as a matter of law that the inner wall of the accused product's upward-facing channel is, necessarily, a flange separate and distinct from the sloping side wall. *See Yufa v. Lockheed Martin, Co.*, 575 F. App'x 881, 886 (Fed. Cir. 2014) (citation omitted) (summary judgment on infringement or non-infringement is proper if "no reasonable jury could find that every limitation recited in the properly construed claim either is or is not found in the accused device.").

### 2. Shoulder

The Court grants Mouldtec's motion for summary judgment with respect to non-infringement on the basis that no reasonable juror could find that the accused products contain a shoulder "extending between the top of the sloping walls of the crate and the channel base or the bottom of the inner flange of the channel." This Court refused to construe the shoulder limitation, instead finding that the plain and ordinary meaning of shoulder as "some sort of lateral protrusion" controlled and that the claim language clarifies the location of the shoulder. *See Mouldtec*, 2014 WL 4262633, at *3. Claim 2 describes the shoulder as located "between the top of the sloping walls of the crate and the channel base or the bottom of the inner flange of the channel." Figures 5 and 7 illustrate: "shoulder **9** is arranged on the inside of the channel, **5, 6, 7** open at the top, approximately at the height of the base **7** thereof, which shoulder **9**, as can be seen from the plan view in FIG. 7, is broadest at the corners of the crate and gradually narrows towards the middle of the side walls of the crate." (Dkt. No. 46-1, Patent '330 at 12). Regardless of whether the "channel base" and "bottom of the inner flange of the channel" refer to the same

precise portion of the channel structure, the patent figures, the other language of claim 2, and the specifications all indicate that the shoulder is "arranged on the inside of the channel" and can "serve as a support for a rectangular presentation collar." (*Id.*)



**Figure 5**. "[C]ross-section through a side wall section of two crates nested in one another." (Dkt. No. 46-1, Patent '330 at 5).

**Figure 7**. "[P]lan view of the crate." (Dkt. No. 46-1, Patent '330 at 9).

The "shoulder" in the accused products, however, does not extend between the channel base or the bottom of the inner flange of the channel and any other component of the crate. Figure 8 shows the accused shoulder extending between a recessed wall and non-recessed wall; always below the channel. (*See, e.g.,* Group Figure 2). Even in the picture in Figure 6 above, relied upon heavily by Pagter, there is a distinct gap between the top of the accused shoulder and bottom of the channel. The accused shoulder is not "arranged on the inside of the channel" and does not protrude from any part of the channel. The claim language clarifies the location of the shoulder limitation in claim 2, as do the patent figures and specifications. The Court need not and cannot turn to extrinsic evidence, such as expert reports, to clarify what these publically-

available documents already clearly establish. *See Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583 (Fed. Cir. 1996) ("Allowing the public record to be altered or changed by extrinsic evidence at trial, such as expert testimony,



**Figure 8**. Pagter's labelled version of accused crate. (Dkt. No. 133, Infringe. Resp. at 12).

would make this right [*i.e.* for competitors to rely on the public record] meaningless."). Because the accused products do not have a lateral protrusion "extending between the top of the sloping walls of the crate and the channel base or the bottom of the inner flange of the channel," no reasonable jury could find that they contain the shoulder limitation in claim 2 of the '330 patent.



**Group Figure 2**. Various views of accused crate. (Dkt. No. 129-2, at 39, 49).

Pagter's infringement argument regarding the shoulder limitation is not saved by the doctrine of equivalents.[3] The "test of equivalence of a proposed substitute for a missing element

---

[3] The Court refuses to strike this argument as untimely. It is elementary that infringement must be shown literally or under the doctrine of equivalents. Claim vitiation is not an exception to the doctrine of equivalents and need not necessarily be disclosed under the Local Patent Rules as a non-infringement contention unless its omission would somehow render the Non-Infringement Contentions unresponsive. *See* L.P.R. 2.3(a). More importantly, even if this argument were untimely, precluding Mouldtec from pursuing its doctrine of equivalents theory would only be

is ordinarily a factual inquiry reserved for the finder of fact." *Deere & Co. v. Bush Hog, LLC*, 703 F.3d 1349, 1356 (Fed. Cir. 2012). The Court, however, must "ensure that the doctrine of equivalents is not permitted to overtake the statutory function of the claims in defining the scope of the patentee's exclusive rights." *Id*. "Vitiation" of a claim element—as Mouldtec asserts in this case—is not an exception to the doctrine of equivalents, but rather a "legal determination that the evidence is such that no reasonable jury could determine two elements to be equivalent." *Id*. (internal quotation marks and citation omitted). The "proper inquiry for the court is to apply the doctrine of equivalents, asking whether an asserted equivalent represents an insubstantial difference from the claimed element, or whether the substitute element matches the function, way, and result of the claimed element." *Id*. (internal quotation marks and citation omitted). In this case, no reasonable jury could find equivalence between the accused shoulder and the shoulder limitation of claim 3 in the '330 patent.

Pagter claims that Mouldtec's vitiation argument fails because it "…does not address the substantial evidence found in Pagter's infringement contentions and the report of Pagter's expert as to why a person of skill in the art would understand that the Accused Crate includes structures that satisfies the 'function, way, result' test with respect to the shoulder limitation.'" (Dkt. No. 133, 15-16). In support, Pagter directs the Court to Dr. Kazmer's report where he discusses the location of the "top of the sloping side wall" and the existence of a "side wall having a shoulder" on the accused crates. Dr. Kazmer's report and the rest of the record, however, contain no evidence demonstrating that a shoulder in a location other than that specified in claim 2 of the

---

appropriate if Pagter were prejudiced by the fact that this theory was not contained in Mouldtec's Final Infringement Contentions. *See, e.g., U.S. Gypsum Co. v. LaFarge N. Am., Inc.*, 508 F. Supp. 2d 601, 619-20 (N.D. Ill. 2007) adhered to in relevant part on reconsideration, No. 03 C 6027, 2007 WL 2091020 (N.D. Ill. July 18, 2007); *United States ex rel. Tyson v. Amerigroup Illinois, Inc.*, 230 F.R.D. 538, 541–42 (N.D .Ill. 2005). Pagter has not claimed any prejudice, such as incomplete discovery or time to prepare, and the Court cannot identify any such prejudice from the record. A sanction, therefore, is not warranted.

'330 patent would be equivalent to a shoulder in the claim 2 location. This is not a case of a mere "binary" choice in which an element of the claim is either present or not present: a failure to limit the location of the shoulder to some functional equivalent other than that set forth in claim 2 would inappropriately vitiate the claim 2 limitation requiring the shoulder be placed in a specific location on the crate. *See, e.g., Freedman Seating Co. v. Am. Seating Co.*, 420 F.3d 1350, 1362 (Fed Cir. 2005) (finding that all support members capable of allowing translational and rotational motion would entirely vitiate limitation requiring "slidably mounted" member); *Tronzo v. Biomet, Inc.*, 156 F.3d 1154, 1160 (Fed. Cir. 1998) (holding that finding all shapes to be equivalent structure would entirely vitiate the limitation requiring a "generally conical shape"); *Sage Prods., Inc. v. Devon Indus., Inc.*, 126 F.3d 1420, 1423 (Fed.Cir.1997) (finding that the patentee's argument that a limitation of an "elongated slot at the top of the container body" included a slot located in the interior of the container would vitiate that limitation).

Moreover, there is an additional concern in this case that the public reasonably relies on patents of simple structures. The flower crates protected by the '330 patent, though creative in their design, involve relatively simple designs and obvious structures. The patentees chose the language describing the shoulder location and chose to describe that location in a specific way as to allow it to support the rectangular presentation collar. Accordingly, to now say the shoulder limitation includes other shoulder locations would, under the doctrine of equivalents, "unjustly undermine the reasonable expectations of the public." *Freedman*, 420 F.3d at 1362, *citing Sage Prods.*, 126 F.3d at 1425 ("Given a choice of imposing the higher costs of careful prosecution on patentees, or imposing the costs of foreclosed business activity on the public at large, this court believes the costs are properly imposed on the group best positioned to determine whether or not a particular invention warrants investment at a higher level, that is, the patentees."); *see also*

*Conopco, Inc. v. May Dep't Stores Co.*, 46 F.3d 1556, 1562 (Fed. Cir. 1994) ( "The doctrine of equivalence cannot be used to erase 'meaningful structural and functional limitations of the claim on which the public is entitled to rely in avoiding infringement.' " (citation omitted)). Accordingly, the Court concludes that the accused products do not contain the shoulder limitation, either literally or under the doctrine of equivalents. *See Deere*, 703 F.3d at 1356 (internal quotation marks and citation omitted) ("If no reasonable jury could find equivalence, then the court must grant summary judgment of no infringement under the doctrine of equivalents.").

### B. Invalidity

Based on its finding of non-infringement, the Court declines to exercise jurisdiction over Mouldtec's claim for invalidity and dismisses it as moot. This Court has the discretion to dismiss an invalidity claim for lack of jurisdiction where it finds non-infringement. *See AstraZeneca LP v. Breath Ltd.*, 542 F. App'x 971, 981 (Fed. Cir. 2013) ("[A] district court can dismiss an invalidity counterclaim when it finds noninfringement or dismisses an infringement claim with prejudice."), citing *Liquid Dynamics Corp. v. Vaughan Co., Inc.*, 355 F.3d 1361, 1371 (Fed. Cir. 2004) ("A district court judge faced with an invalidity counterclaim challenging a patent that it concludes was not infringed may either hear the claim or dismiss it without prejudice, subject to review only for abuse of discretion."); *Nystrom v. TREX Co., Inc.*, 339 F.3d 1347, 1351 & n. * (Fed. Cir. 2003) ("[T]he district court could have dismissed the counterclaim without prejudice (either with or without a finding that the counterclaim was moot) following the grant of summary judgment of non-infringement."); *Phonometrics, Inc. v. N. Telecom Inc.*, 133 F.3d 1459, 1468 (Fed. Cir. 1998) ("We have previously held that a district court has discretion to dismiss a counterclaim alleging that a patent is invalid as moot where it finds no infringement."); *see also*

*Aqua Marine Supply v. AIM Machining, Inc.*, 247 F.3d 1216, 1220 (Fed. Cir. 2001) ("[W]here, as here, the alleged infringer has settled the infringement issue, and no longer professes any interest in defending its declaratory judgment of invalidity, the case has become moot as a result of the voluntary act of the patentee.").

In this case, the exercise of such discretion is warranted. The non-infringement judgment clearly resolves this case and there is no ongoing controversy under the invalidity claim warranting this Court's continued consideration. Mouldtec's objective in pursuing this litigation was to protect its accused products against the looming threat levied by Pagter and the '330 patent. That end has been achieved. The claim seeking a declaration of invalidity is dismissed without prejudice. *See, e.g., AstraZeneca LP v. Breath Ltd.*, Civ. No. 08-1512, 2013 WL 2404167, at *7 (D.N.J. May 31, 2013) (dismissing invalidity claim after finding non-infringement), aff'd 542 F. App'x 971; *Wells–Gardner Elec. Corp. v. C. Ceronix, Inc.*, Civ. No. 10–2536, 2011 WL 1467182, *3 (N.D. Ill. Apr. 14, 2011).

### C. Exceptional Cases Under § 285

Mouldtec and Pagter filed claims for attorney fees under Section 285. Though they have yet to seek judgment on these claims, the Court takes this opportunity to admonish the parties to comply with Local Rule 54.3 before seeking Court intervention on this point. This Court "may award reasonable attorney fees to the prevailing party" in "exceptional" patent infringement cases. 35 U.S.C. § 285. Local Rule 54.3 provides, however, an additional procedure for filing a motion for attorney fees in the Northern District of Illinois. Among other things, Local Rule 54.3 requires the parties to "confer and attempt in good faith to agree on the amount of fees or related nontaxable expenses that should be awarded prior to filing a fee motion." L.R. 54.3(d). While "attempt[ing] to agree," the parties are required to exchange certain information. L.R. 54.3(d).

Specifically, the movant—the party intending to file the fee motion—must provide the respondent with all time and work records and specify the hours for which compensation will be sought, the hourly rates claimed, and evidence supporting any related nontaxable expenses. *See* L.R. 54.3(d)(1)-(3). If no agreement can be reached after the movant provides this information, the respondent is required to disclose its total amount of attorney fees paid and must provide additional information relating to any matters that remain in dispute. *See* L.R. 54.3(d)(5).

## CONCLUSION

For the reasons stated, this Court grants Mouldtec's motion for summary judgment of non-infringement [126]. Its motion for summary judgment of invalidity [122] is dismissed as moot.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: 9/29/2015